E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

| Presiding: The Honorable | | GEORGE H. KING, U. S. DISTRICT JUDGE | |
|---|---|---|---|
| Beatrice Herrera | | N/A | N/A |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Plaintiffs' Motion for Class Certification; **[54]**

This matter is before the Court on Plaintiffs Luis Polanco ("Polanco"), Robert Taylor ("Taylor"), and Alan Krumbine's ("Krumbine" and, collectively, "Plaintiffs") Motion for Class Certification ("Motion"). Plaintiffs are former mechanics employed by Defendant Schneider National Carriers, Inc. ("Defendant" or "Schneider") who move to certify a class of Schneider mechanics in connection with Schneider's alleged violations of the California Labor Code. We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.     Introduction**

Plaintiffs' Consolidated Amended Class Action Complaint ("CACAC") is based on the following allegations and theories of liability: First, Defendant did not validly adopt an Alternative Workweek Schedule ("AWS"), yet employees worked shifts in excess of eight hours per day and were only paid at their regular base rate of pay. Because Defendant's AWS was not validly adopted, Defendant was not exempt from paying workers overtime premiums and its failure to do so violated the Labor Code. Second, Defendant failed to count employees' rest periods as "hours worked" for overtime purposes. Thus, Defendant denied its employees one-half hour of daily overtime premiums. Third, Defendant failed to provide its employees with separate ten minute rest breaks for each four hours worked, instead providing only an aggregated thirty minute rest period during each shift. Fourth, Defendant failed to provide employees with a second meal period even though they worked shifts in excess of ten hours per day. Fifth, supervisors had a policy of shaving down/writing off hours that were worked by employees in excess of their scheduled shift. Sixth, Defendant had a policy of not paying employees for pre-shift and post-shift work (getting dressed, cleaning work stations, and so forth). Seventh, Defendant failed to reimburse employees for business expenses they incurred.

On these bases, Plaintiffs assert the following claims against Schneider: (1) failure to pay daily overtime premiums (on the basis of the invalidity of the AWS); (2) failure to pay overtime compensation

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|

| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* |
|---|---|

(on the basis of Defendant's failure to count rest periods as "hours worked"); (3) failure to pay overtime compensation (pursuant to Defendant's policy of time shaving and excluding pre-shift and post-shift work); (4) failure to provide rest periods; (5) failure to provide meal periods; (6) failure to provide accurate wage statements; (7) failure to indemnify employees for business expenses; (8) failure to pay all wages on termination; (9) failure to pay vested vacation wages; and (10) violations of the Unfair Competition Law. Plaintiffs also seek PAGA penalties on the basis of their Labor Code claims.

Plaintiffs seek to certify the following Class: "All persons, at any time from February 5, 2006 to the present (the 'Relevant Period'), who were employed in California by Schneider National Carriers, Inc. in any full-time hourly mechanic position." Plaintiffs also seek to certify the following Subclasses: (1) The 1999 AWS Subclass: "Class members who worked an alternative workweek schedule at Schneider National Carriers, Inc. prior to March 30, 2010"; (2) The Former Employee Subclass: "Class members who are no longer employed by Schneider National Carriers, Inc." For the reasons discussed herein, and pursuant to our authority to certify a class action with respect to particular issues, Fed. R. Civ. P. 23(c)(4), we certify the Class and Subclasses with respect to Claims 1, 2, 4, 5, 6, 8, 9, and 10. We decline to certify the Class and Subclasses with respect to the Claim 3. We also decline to certify the proposed Class and Subclasses with respect to the Claim 7 because Plaintiffs' Motion fails to address class certification with respect to this claim. Accordingly, we deem Plaintiffs to have abandoned their class allegations on this claim.

## II.     Legal Standard

A motion for class certification is governed by the requirements of Federal Rule of Civil Procedure 23. In determining whether to certify the class, we must take the substantive allegations of the CACAC as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). However, we may look beyond the pleadings and at the substantive claims of the parties to decide whether the Rule 23 criteria have been met, *id.*, as "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).

Plaintiffs seek to certify a Rule 23(b)(3) Class and Rule 23(b)(3) Sub-Classes. Accordingly, Plaintiffs bear the burden of establishing that the following Rule 23(a) and Rule 23(b)(3) requirements are met:

(1) "the class is so numerous that joinder of all members is impracticable," Rule 23(a)(1);
(2) "there are questions of law or fact common to the class," Rule 23(a)(2);
(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Rule 23(a)(3);
(4) "the representative parties will fairly and adequately protect the interests of the class," Rule 23(a)(4);
(5) "the questions of law or fact common to class members predominate over any questions affecting only individual members," Rule 23(b)(3); and

Case 2:10-cv-04565-GHK-JEM Document 87 Filed 04/25/12 Page 3 of 19 Page ID #:2587

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

(6) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Rule 23(b)(3).

Schneider has asserted voluminous evidentiary objections to the evidence presented by Plaintiffs. Unlike evidence presented at a summary judgment stage, though, evidence presented in support of class certification need not be admissible at trial. *See Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008). Accordingly, we need not rule on Schneider's specific evidentiary objections. However, to the extent that Schneider objects on grounds suitable for review at this stage, its objections are either moot because they do not go to evidence that formed the basis for this ruling, or are overruled.

**III.    Rule 23 Requirements Common to All claims**

The Parties' arguments regarding numerosity, adequacy, and superiority apply equally to all claims. Accordingly, we address these issues first, before discussing commonality, typicality, and predominance on a claim-by-claim basis.

   *A.    Numerosity (Rule 23(a)(1))*

Plaintiffs have identified the Class as consisting of about 150 former and current employees who are ascertainable from employer records. "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). Accordingly, Rule 23(a)(1)'s numerosity requirement is satisfied.

   *B.    Adequacy of Class Representatives and Class Counsel (Rule 23(a)(4))*

Plaintiffs must establish that each representative Plaintiff and proposed Class Counsel are adequate under Rule 23(a)[1] – that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

---

[1] Plaintiffs argue that we need not decide whether all of the proposed Class Representatives are adequate, so long as we can determine that one proposed Class Representative is adequate. (Reply 25). This argument is not well taken. It is true that only one class representative must be adequate for a class to be certified (for Rule 23(a)(4) to be met), and for this reason courts of appeals reviewing class certification decisions sometimes only verify that one class representative is adequate. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001). However, Plaintiffs cite no authority for the proposition that we could appoint an inadequate Plaintiff as a Class Representative.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

Defendant does not contest the adequacy of proposed Class Counsel (Hagens Berman Sobol Shapiro LLP), a firm experienced in class action litigation, or proposed Liaison Counsel (Rastegar & Matern). We conclude that Class Counsel will adequately protect the interests of the Class and appoint Hagens Berman Sobol Shapiro LLP as Class Counsel and Rastegar & Matern as Liaison Counsel.

Defendant challenges the adequacy of each of the proposed Class Representatives on the basis of Plaintiffs' integrity and credibility. Integrity and credibility are certainly relevant considerations in determining adequacy. *See Harris v. Vector Mktg.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("As noted by one court, '[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" (quotation mark omitted) (quoting *Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 1337684, at *4, (N.D.Ill. Mar. 31, 2010))). However, for credibility or integrity issues to undermine adequacy of any proposed Class Representative, those issues must be "directly relevant to the litigation" or there must have been "confirmed examples of dishonesty, such as a conviction for fraud." *See id.* (quoting *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. 2010)). Moreover, credibility and integrity concerns do not automatically make a proposed Class Representative inadequate. *See id.* at 1015; *see also In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (finding a plaintiff to be adequate even though he had previously been indicted for mail fraud and racketeering). The alleged credibility and integrity issues must place the interests of absent class members at risk. *See id.* Indeed, Plaintiffs "need not be perfect, only adequate." *Ross*, 2010 WL 3980113, at *5. We address the adequacy of each proposed Class Representative below.

       **1.    Alan Krumbine**

Defendant argues that Krumbine is an inadequate representative because he "never formed the belief that he has a claim against Schneider." (Opp'n 24). This argument is not well taken. It is based on a misleading interpretation of Krumbine's deposition testimony in which Krumbine was asked about his termination and severance offer from Schneider, and he stated that he did not believe he had a valid claim against the company. Plaintiffs explain that after viewing the transcript of the deposition, Krumbine clarified in his notice of errata that he meant he did not believe he had a valid claim against Schneider "in connection with the severance agreement." (Reply 22). Plaintiffs further note Krumbine's participation in this litigation for almost two years. (*Id.*).

Given this explanation, and after viewing Krumbine's deposition testimony in context, we conclude that it is not only plausible, but likely, that Krumbine merely meant to communicate that he did not believe he had a claim against Schneider regarding wrongful termination or the severance agreement. The deposition testimony does not demonstrate that Krumbine believes he has no case against Schneider for the wage and hour claims asserted in the CACAC. As such, Defendant's only reason for challenging Krumbine's adequacy fails. Krumbine does not appear to have any conflicts of interest with the class, he was an employee from 1994 to 2009 (and thus during the time of the 1999 AWS election), and he has

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

expressed his willingness to vigorously pursue the interests of the class in this litigation. Accordingly, we conclude that Krumbine is an adequate Representative of the Class and Subclasses.

### 2. Robert Taylor

Defendant argues that Taylor is inadequate as a Class Representative for four reasons. First, Taylor purportedly "made a false statement about his identity (providing an alias of a deceased individual) because he was wanted for parole violations." (Opp'n 24-25). Defendant provides no proof of this assertion or details regarding this purported offense,[2] nor does it explain why a criminal offense that Taylor alleges is from "*decades ago*," (Reply 24), and that is unrelated to the issues in this litigation makes Taylor an inadequate Class Representative. *See Spears v. First Am. eAppraiseIT*, No. C-08-00868 RMW, 2010 WL 2674031, at *4 (N.D. Cal. July 2, 2010) ("In light of the fact that Spears' arrests and convictions are all at least thirty years old, the court finds that they do not raise serious concerns about his credibility and thus do not prevent him from adequately representing the class." (citation omitted)).

Second, Defendant argues that "Schneider terminated Taylor in August of 2009 for falsely reporting his time worked." (Opp'n 2). Again, Defendant fails to provide sufficient evidence of this assertion. In support of this allegation, Defendant only cites an exhibit to Taylor's deposition testimony. However, any pages of the deposition that introduce, explain, authenticate, or discuss the exhibit have been omitted from the deposition excerpts filed by Defendant. Moreover, the exhibit is unlabeled and includes two pieces of paper with very little explanatory text. The first page states, in relevant part: "Reason for separation: Dishonesty, Theft. Robert claimed time and repairs on two trailers that had just been completed by an outside vendor that same day." The second page, which we surmise is his supervisor's comments regarding the event that led to his termination, states, in relevant part: "1337299 3.0+ hours on rpl. tire. I think (hope) Robert forgot to logoff tire and go onto door repair because Dean had to do a lot of rework on the door and there is no labor for robert there." Accordingly, the second page does not even appear to support the conclusion of the first page – that Taylor engaged in dishonesty or theft. At best, the second page appears to assert that Taylor may have made an error with respect to the work order he was logged into.

Defendant's failure to provide a declaration explaining the context or substance of this exhibit, and its failure to include the pages of Taylor's deposition in which this exhibit was discussed, is highly problematic. It makes it impossible for us to assess why Taylor was terminated, the circumstances of the termination, Taylor's explanation of the termination, and whether the termination so impugns Taylor's credibility and integrity as to place the interests of absent class members at risk. There appears to be no allegation that he did not come into work and instead entered hours for when he was not there, that he after-the-fact changed his hours on his timecard, or anything showing that the circumstances of Taylor's

---

[2] In support of this statement, Defendant cites only page 215, lines 3-8 of Taylor's deposition testimony, which briefly addresses Taylor's termination but not any purported false statements made about his identity.

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

termination would distract from the issues salient in this litigation – Schneider's alleged failure to properly pay employees for all hours worked. Indeed, as long as an employee was working, the fact that he may have been improperly logged into the wrong work order code does not suggest that he was paid for hours that he did not work. Accordingly, Defendant's allegations about Taylor's termination "are insufficient to overcome the burden imposed on a party challenging the adequacy of the named representatives." *Breeden v. Benchmark Lending Grp.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005). We do not look with sympathy upon these types of unsubstantiated character attacks by Defendant in opposing class certification, given that they are made for the purpose of defeating class certification, not out of any genuine concern for the interests of the class. *See In re Computer*, 111 F.R.D. at 682; *see also id.* at 683 (noting that if at any point the plaintiff's representation appeared to be inadequate due to credibility and integrity issues, the court could disqualify him at that time).

Third, Defendant argues that "Taylor said that he had no wage claims other than his dispute about his termination." (*Id.* at 24). This argument is based on a misleading, selective, and out-of-context citation to Taylor's deposition. Defense counsel asked whether Taylor believed he was owed any additional compensation from Schneider. Taylor answered: "After for what they terminated me for, yes." Defense counsel then asked: "Any other reason?" Taylor answered: "No." Defendant does not provide sufficient pages of deposition testimony for us to even determine the context of this question or statement. Because of Defendant's failure to do so, we decline to assume that Taylor believes he is not owed compensation from Defendant for any of the claims asserted in this class action. In addition, based upon any fair reading of his testimony, his statement was meant to be responsive to claims about his termination, not about Schneider's allegedly unlawful compensation policies.

Fourth, Defendant argues that Taylor "testified that he spent about 9 to 10 hours each day on work orders, and about 1 hour each day on cleaning, while the data shows that he averaged 3.2 hours daily on work orders, and 5.7 hours daily on cleaning." (*Id.* at 25). This inconsistency is not sufficient to make Taylor inadequate as a Class Representative. *See Cruz v. Dollar Tree Stores, Inc.*, Nos. 07-2050 SC, 07-4012 SC, 2009 WL 1458032, at *7 (N.D. Cal. May 26, 2009) ("The inconsistency between his deposition testimony and statements in a declaration is not sufficient to impugn Hansen's credibility."); *Aho v. Americredit Fin. Servs., Inc.*, No. 10cv1373 DMS (BLM), 2011 WL 5401799, at *6 (S.D. Cal. Nov. 8, 2011) ("Although Defendant has pointed out some inconsistencies in Plaintiff's testimony, those inconsistencies are not so sharp as to jeopardize the interests of absent class members[,] thereby rendering Plaintiff an inadequate class representative." (internal quotation marks omitted)). Defendant provides no evidence that Mechanics were paid at different rates when they are clocked in under the "work order" code as opposed to the "cleaning" code, or that they were paid only when clocked in under the "work order" code. Therefore, while this inconsistency may mean that Taylor is a less efficient cleaner that he thinks he is, it does not mean that he was not entitled to compensation during the cleaning hours.

In light of the foregoing, Defendant's grounds for inadequacy are all without merit. Taylor may not be a perfect Class Representative, but Defendant has not provided sufficient evidence to show that he is inadequate based on credibility or integrity issues going to the heart of the Parties' dispute.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

### 3. Luis Polanco

Defendant argues that Polanco is inadequate as a Class Representative because, *inter alia*, Polanco was terminated for time card fraud. In support, Defendant cites an exhibit to Polanco's deposition testimony that appears to be documentation regarding his termination. Unlike the exhibit proffered with respect to Taylor's termination, the exhibit offered relating to Polanco's termination is of sufficient length and is descriptively labeled so as to provide adequate context. The exhibit shows that Polanco was on a Performance Improvement Plan due to multiple incidents in which (1) his time card did not reflect what he was actually doing (i.e., he was logged in to work when he was actually sleeping or taking an extended break), and (2) he was tardy. His Performance Improvement Plan warned him that if he again falsified data he would likely be terminated. Thereafter, Polanco allegedly was playing basketball while logged in to a work order. The exhibit includes statements from several displeased co-workers discussing the basketball incident. It further includes an email from one of Polanco's co-workers stating that Polanco did not have the "core values" of other Schneider employees, that he was sleeping on the job, and took extended breaks.

Defendant adequately demonstrates that Polanco is vulnerable to relevant credibility issues that pose a serious risk of injuring the interests of absent class members. Timekeeping is "directly relevant" to this dispute – indeed, the central dispute in this litigation is whether Schneider failed to pay employees all wages owed for hours worked. Defendant essentially alleges the inverse – that Polanco was terminated because he sought to be paid for hours that he failed to work and thus for wages that he was not owed. As such, the types of substantiated allegations present here – that a Class Representative was falsely logged in to work at a particular time and was habitually dishonest about the hours that he worked – could derail the focus of the litigation at trial. Questions about Polanco's credibility could consume his testimony at trial and detract from the jury's proper focus on Defendant's allegedly unlawful timekeeping policies. Impeachment witnesses that Defendant could call – such as displeased former co-workers – could further derail the jury's focus at trial and cast doubt in the eyes of jurors about the honesty and credibility of employees. In addition, that several of Polanco's co-workers submitted statements at the time of his termination casting doubt upon his integrity as an employee suggests that his own co-workers may not feel comfortable relying on him to represent their best interests. Accordingly, we conclude that Polanco is not an adequate Class Representative. *See Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) ("Barry Zemel's vulnerable credibility also detracts from his typicality as well as his adequacy for fulfilling his fiduciary obligations as class representative.").

In summary, we are satisfied that Rule 23(a)(4)'s adequacy requirement is met, and we hereby appoint Taylor and Krumbine as Class Representatives, Hagens Berman Sobol Shapiro LLP as Class Counsel, and Rastegar & Matern as Liaison Counsel.

### C. *Superiority (Rule 23(b)(3))*

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

Plaintiffs allege that Defendant committed wage and hour violations. Wage and hour disputes are often considered appropriate for resolution on a classwide basis where, as here, they involve employer policies that are uniform as to all employees. *Arredondo v. Delano Farms Co.*, No. CV F 09-1247 LJO DLB, 2011 WL 1486612, at * 17 (E.D. Cal. Apr. 19, 2011).

We conclude that Plaintiffs meet their burden of establishing Rule 23(b)(3)'s superiority requirement. Requiring each employee to file an individual claim would result in duplicative discovery and filings, particularly given that many of the claims hinge on determinations common to each claim – whether the AWS was lawfully adopted, whether rest breaks can be aggregated under the Labor Code, and so forth. This case is also manageable as a class action. Defendant's records for each employee concerning their payroll history, hours worked, and so forth can be analyzed readily to determine any issues related to the claims and damages.

## IV.     Commonality, Superiority, and Typicality

Rule 23(a)(2)'s commonality rule requires Plaintiffs to show that "there are questions of law or fact common to the class. These common issue or issues must be *material* to the resolution of the claims asserted and thus demonstrate that putative Class Members "suffered the same injury." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1992). Indeed, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Under Rule 23(a), the common issues need not be numerous – even a single common question that can generate a common answer that will drive the litigation will suffice. *See id.* at 2551, 2556. In addition, because Plaintiffs seek to certify a 23(b)(3) class, they must also show that these common questions will "predominate over any questions affecting only individual members."

To satisfy Rule 23(a)(3)'s typicality prerequisite, Plaintiffs must show that their claims or defenses "are typical of the claims or defenses of the class." Such claims must be "reasonably co-extensive" with, but not identical to, the putative Class Member's claims. *Hanlon*, 150 F.3d at 1020. Plaintiffs may be atypical where, for example, they are subject to unique defenses that other members of the putative Class are not. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The Parties' disputes regarding commonality, typicality, and predominance differ based on the specific claims asserted by Plaintiffs. Accordingly, we address those specific issues within our discussion of each claim below.

### A.     *Claim 1: AWS Claim (Failure to Pay Overtime)*

In their AWS-related overtime claim, Plaintiffs allege that Defendant did not validly adopt an AWS of four 10- or 11-hour days. Plaintiffs allege that Defendant's purported adoption of the AWS

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

violated provisions of the Labor Code and applicable Wage Orders. Thus, Defendant is not exempt from paying employees overtime for the hours worked beyond eight hours in a day.

### 1.   Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3))

Defendant argues that Rule 23's commonality and predominance requirements are not met with respect to this claim for four reasons: First, "there is wide variation in the recollections of the AWS election procedures that Schneider followed back in 1999. As such, this Court will need to make individualized inquiries of all of the individuals involved in the election," which precludes certification. (Opp'n 14). Defendant's argument is utterly without merit. AWS's are not negotiated individually, between each employee and Defendant. The AWS is either valid as to all employees or invalid as to all employees. Variation in memories of workers who participated in the 1999 election is only relevant to the merits of Plaintiffs' claim (whether Plaintiffs can prove or convince a jury that an AWS was validly adopted), not to whether this claim is suitable for resolution on a class-wide basis. Indeed, whether Plaintiffs were bringing individual actions or a class action, Defendant and Plaintiffs could present the same (and potentially large quantity of) witnesses to establish whether the IWC Wage Order's AWS-related prerequisites were satisfied. This characteristic makes this claim ideally suited for resolution on a class-wide basis because if it were asserted in individual actions, Defendant would be required to present the same witnesses in dozens of actions. This would be a significant waste of judicial resources.

Second, Defendant argues that mechanics preferred the four-day workweek to a more conventional five-day workweek. Thus, Defendant argues that it has equitable defenses of consent or laches, which will require the Court to "hear testimony from each and every putative class member about whether they preferred, benefited from, and thus consented to the AWS, as opposed to a 5/8 schedule." (*Id.* at 15). These individualized inquiries purportedly defeat commonality and predominance.

This argument is also without merit. The right to overtime is an unwaivable protection. *See Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1014 (N.D. Cal. 2009) ("Employees cannot agree to waive their right to overtime pay."); *Gentry v. Superior Court,* 42 Cal. 4th 443, 455 (2007) ("By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the statute are unwaivable."). Indeed, with the exception of a validly adopted AWS, the right to overtime compensation is not subject to waiver even by explicit, written agreement. *See* Cal. Labor Code § 1194 ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of . . . overtime compensation . . . ."). In addition, the doctrine of laches is inapplicable where, as here, a statute of limitations governs an action. *See Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. Ap. 4th 612, 619 (1992) ("The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature."); *Gentry*, 42 Cal. 4th at 470 (noting that the California Code of Civil Procedure provides for a three-year statute of limitations for recovering overtime wages). Moreover, even if Defendant could show that the doctrine of laches applied, it would apply equally to all Class Members, since the AWS election took place at the same for all employees.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|

| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* |
|---|---|

Third, Defendant alleges that it "substantially complied" with the procedural requirements for adopting a valid AWS, and thus the Court will need to individually inquire of each mechanic involved in that election to determine whether there was substantial compliance. Like Defendant's "variable memories" argument, this "substantial compliance" argument fails. If the substantial compliance doctrine is applicable to this claim – a matter that Plaintiffs contest – and Defendant substantially complied, then the AWS was valid as to all employees. If the doctrine is not applicable, or if it is applicable but Defendant did not substantially comply, then the AWS was not validly adopted as to any employees. While Defendant may of course present employees as witnesses in determining whether there was substantial compliance in the 1999 AWS election (should the doctrine apply to this claim), they would do so whether the case involved a single plaintiff or an entire class of workers.

Fourth, to the extent Plaintiffs argue that Schneider failed to provide disclosure of the AWS proposals in Spanish, (Mot. 9 n.13), Defendant argues that each individual mechanic's proficiency in English and Spanish will have to be established. Defendant states that this will result in individualized inquiries and thus preclude certification, (*id.* at 14-15 n.55). Defendant again misses the point. Wage Order 9 requires that if at least five percent of the employees potentially affected by an AWS election primarily speak a non-English language, then the employer must provide disclosures in that non-English language. (Wage Order 9, subd. 3(C)(3)). Thus, the pertinent questions in this case will be whether this requirement applies to the 1999 AWS and whether five percent or more of the employees potentially affected by the AWS election primarily spoke Spanish. If so, then the AWS was not valid as to any employees. If not, then the AWS was not for this reason invalid as to any employees. Whether this case involved a single plaintiff or a class of plaintiffs, the Parties would likely provide evidence regarding individual mechanics' proficiency in English to determine whether Spanish disclosures were required.

In light of the foregoing, we reject all of Defendant's arguments. Plaintiffs' AWS-related claim certainly involves "questions of law or fact common to the class" given that the AWS is either valid as to the entire Class or invalid as to the entire Class, and the entire Class of Mechanics had a uniform work schedule. The primary common factual question is whether Defendant complied with the procedural requirements of Wage Order 9 and Labor Code § 511 in adopting the 1999 AWS. The primary common legal issue is whether Defendant's AWS was validly adopted under California law. If these questions are answered in the negative, then overtime compensation must be paid to all Class Members for the hours worked in excess of eight hours per day. These common questions thus "will resolve . . . issue[s] that [are] central to the validity of each" putative Class Member's "claims in one stroke." *Dukes*, 131 S. Ct. at 2551. In addition, these issues "predominate over any questions affecting only individual members." Indeed, once these common questions and issues are resolved, the only individual questions, if any, will be related to the calculation of damages. Accordingly, Plaintiffs' AWS-related overtime claim meets Rule 23's commonality and predominance requirements.

  **2.      Typicality (Rule 23(a)(3))**

The claims or defenses of the Class Representatives are typical of – indeed identical to – the claims of Class Members. Taylor and Krumbine state in their declarations that they were scheduled to

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

work an eleven hour shift, four days per week, and that they did not receive daily overtime premiums for regularly scheduled work in excess of eight hours per day. (Taylor Decl. 3, 4; Krumbine Decl. 5, 7). And, as discussed above, the only applicable defenses that Defendant points to with respect to this claim are defenses that are common to the class as a whole.

In conclusion, Plaintiffs' first claim meets the requirements of Rule 23(a) and 23(b)(3) and is suitable for class resolution.

### B. Claim 2: "Hours Worked" Claim (Failure to Count Rest Periods as "Hours Worked")

In their "hours worked"-related overtime claim, Plaintiffs allege that mechanics were not paid overtime premiums for rest breaks that were taken during otherwise overtime-compensable hours. They argue that this practice was unlawful because under Wage Order 9, rest break time must be counted as "hours worked" for overtime purposes. This claim does not appear to hinge on Plaintiffs' AWS claim because even if the AWS is valid, Plaintiff argues that Defendant was only exempt from paying employees overtime compensation for a ten-hour workday. *See* Cal. Labor Code § 511 (providing that pre-2000 AWS's may provide "for a regular schedule of no more than 10 hours' work in a workday"). Counting the paid rest period, Mechanics "worked" 10.5 hours per day and thus were still entitled to one-half hour overtime compensation for the one-half hour rest period "worked."

#### 1. Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3))

Defendant's only argument that appears applicable to this claim is that it is not required to provide overtime compensation for the paid rest breaks because such breaks are not "hours worked" under California law. Such a claim is a purely legal issue that is common to all employees and in no way makes the claim unsuitable for class resolution. If Plaintiffs' legal argument is correct, then Defendant owes overtime compensation for the rest breaks to all Class Members. If Defendant's legal argument is correct, then Defendant does not owe overtime compensation for the rest break to any Class Members. Accordingly, this purely merits-based issue does not preclude class certification.

Plaintiff's "hours worked" claim involves "questions of law or fact common to the class," given that the rest period is either compensable in overtime wages for the entire Class or not compensable in overtime wages for any Class Members. The common factual question is whether Defendant counted rest periods as "hours worked" for purposes of overtime premiums. The common legal issue is whether a paid rest period is time "worked" under California law for purposes of overtime compensation. This issue "predominate[s] over any questions affecting only individual members", Fed. R. Civ. P. 23(b)(3), and will "drive the resolution of litigation," *Dukes*, 131 S. Ct. at 2551 (quoting Richard A Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). Indeed, once this issue is resolved, the only individual questions, if any, will be related to the calculation of damages. Accordingly, Plaintiffs' "hours worked" claim meets Rule 23's commonality and predominance requirements.

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

### 2. Typicality (Rule 23(a)(3))

Taylor and Krumbine state that they were scheduled to work an eleven hour shift, four days per week, which included a one-half hour paid rest break that was not compensated at an overtime rate. (Taylor Decl. 3, 4; Krumbine Decl. 7). Accordingly, the claims or defenses of the Class Representatives are typical of – indeed identical to – the claims of the Parties.

In conclusion, Plaintiffs' second claim meets the requirements of Rule 23(a) and 23(b)(3) and is suitable for class resolution.

### C. Claim 3: Writing Off/Time Shaving Claim

Plaintiffs allege that Defendant engaged in time shaving in two levels: First, Plaintiffs allege that where computerized timekeeping records ("M5 records") did not match paper timecards that employees filled out, Schneider altered M5 records to match the paper timecards. Defendant thus allegedly shaved down any overtime that was actually worked beyond the regularly scheduled shift. (Mot. 11-12). Second, Plaintiffs allege that Schneider permitted employees to do pre-shift and post-shift duties off the clock, such as donning or doffing uniforms or cleaning work stations. (*Id.* at 12).

Defendant argues that no time shaving occurred – it argues that merely paying mechanics based on the hours they documented by hand, rather than by the time stated in M5 time records, does not constitute time shaving. Defendant also states that it paid any overtime worked by employees and that when employees noticed any discrepancies in time recording, Schneider promptly corrected the issue. Defendant further argues, *inter alia*, that employees were not required to don or doff clothes at work or to complete any pre-shift or post-shift work off the clock.

### 1. Commonality (Rule 23(a)(2))

Plaintiffs have sufficiently established that this claim involves some common questions of law and fact. One common factual question is whether employees were required to don and doff clothes at work. A related common legal question is whether time spent doing so is compensable. A second common question of fact is whether Schneider required employees to do pre-shift and post-shift duties off the clock, such as cleaning their work stations. A related common legal question is whether such time is compensable under state law. A third common question of fact is whether Defendant had a policy of excluding time documented in M5 records where that time was not documented on paper timecards. The answers to these common questions can resolve issues that are central to the claims of each Putative Class Member. For example, if Defendant indeed had a policy that all employees were required to don and doff clothes at work, and under California law, time spent doing so is compensable,

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | | Date | April 25, 2012 |
|---|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | | |

these answers can help to drive resolution of this claim. Accordingly, Plaintiffs have sufficiently established that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

### 2. Predominance (Rule 23(b)(3))

Unlike Plaintiffs' AWS and "hours worked" claims, Plaintiffs have not established that the common issues predominate over individualized inquiries that would be required in determining liability. First, although Defendant does not dispute that it had a policy of paying for hours worked according to the paper timecards manually filled out by employees, the fact that Plaintiffs have established that a common policy exists does not necessarily also establish that individualized questions will not predominate. Importantly, Plaintiffs do not establish that employees' paper timecards were always inaccurate and M5 timekeeping records were always accurate – if they had, the only individualized inquiries would be related to the calculation of damages. Although it is possible that on some occasions M5 timekeeping records were a more accurate reflection of the hours worked by an employee, it is just as likely that on other occasions M5 timekeeping records were an inaccurate reflection of the employee's hours worked. For example, if the employee failed to clock in or clock out on the M5 system at the beginning or end of a shift or for a meal break, the paper timecard would be accurate while the M5 records would be inaccurate. Accordingly, Plaintiffs have simply not established that Defendant's policy uniformly affects all employees such that only determining damages would require individually examining each employee's payroll records. Determining whether time shaving occurred will thus require individually examining whether a paper timecard or the M5 record was accurate on a given day for a given employee. Such individualized inquiries will predominate over Defendant's undisputed policy of altering M5 records to match paper timecards.

Second, even assuming that Plaintiffs established that Defendant required pre-shift and post-shift work of employees without compensation,[3] individualized questions will predominate where, as here, Plaintiffs do not point to a uniform policy regarding whether pre-shift and post-shift is required of or performed by all or most employees, the frequency of such work being performed off-the-clock, or the amount of time spent doing such work.[4] Additionally, Plaintiffs do not point to the existence of any

---

[3] We do not purport to determine that Plaintiffs have sufficiently established that such a policy exists. Indeed, we note that this appears to be an area of dispute even among the proposed Class Representatives. (*Compare, e.g.*, Taylor Deposition 79-80 (stating that he dressed and undressed at home, rather than work), *with* Polanco Deposition 97 (stating that employees were instructed not to take uniforms home)).

[4] For example, if Plaintiffs had provided evidence showing that Defendant required every employee to arrive at work fifteen minutes to perform tasks before the scheduled start of a shift, but employees were not only permitted to count the scheduled shift as "hours worked," it would be clear that Defendant is uniformly liable to all employees for each day worked. The only individualized inquiries required would involve the calculation of damages – how many days each employee worked under the policy, information readily available from Defendant's own records. But because Plaintiffs did not establish such a uniform policy, it does not appear that we would be able to determine Defendant's

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

documentation of unpaid pre-shift or post-shift work, thus making it impossible to determine on a uniform basis the extent to which this purported policy affected employees. As such, the Parties must present individual evidence as to each employee's activities on each day to determine whether pre- or post-shift work was performed and thus whether liability exists as to a particular employee on a particular day. As a point of illustration, Plaintiffs' AWS claim, in contrast, clearly establishes a uniform policy and the only question is whether that uniform policy complies with California law. If not, it is clear that on every day that employees worked under the ineffective AWS schedule, Defendant is liable to each employee for wage that were unlawfully paid at the regular rate, rather than at an overtime premium rate. The only individualized inquiries that will be required involve the calculation of damages – how many days each employee worked under the AWS schedule and how many hours were worked during each of those days, information readily available from Defendant's own records.

In light of the foregoing, although common questions of law and fact exist, individualized inquiries will be required to determine liability that will predominate over these common questions of law and fact. As a result, Plaintiffs' third claim is not suitable for resolution on a class-wide basis under Rule 23(b)(3), and we decline to certify the Class or Subclasses as to this claim.

### D. Claim 4: Failure to Provide Rest Periods

As the primary basis[5] for their rest period claim, Plaintiffs assert that California law requires separate ten minute rest breaks during each four hour work period. (Wage Order 9-2001, subd. 12(A)). They allege that Schneider unlawfully provided only one *aggregated* thirty minute rest period for the entire eleven hour shift under the 1999 AWS.

#### 1. Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3))

Schneider's rest break policy is generally undisputed. Indeed, Schneider itself describes its work schedule under the 1999 AWS as an "alternative workweek schedule[] of 4 days per week, with 10 hours of work and two 30-minute, duty free paid breaks," one of which was a paid meal break. (Opp'n 3). Plaintiffs also provide deposition excerpts from Schneider executive Jennifer Smith stating that the

---

liability on a class-wide basis based on the evidence that Plaintiffs point to in their Motion.

[5] Plaintiffs also assert alternate bases for relief under this claim. Because we conclude that the primary basis for this claim meets the Rule 23(a) and 23(b)(3) requirements, we decline to reach whether it would also or alternatively be certifiable on the alternate bases asserted by Plaintiffs.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

company's policy under the 1999 AWS was that mechanics worked a shift of ten hours plus a thirty minute paid rest break and a thirty minute paid meal break. (*See* Smith Deposition 67:2-12). Plaintiffs also presented a documentary presentation that was produced by Schneider stating that mechanics "can combine [separate rest breaks] into one break, thus 30 min break." (Gordon Decl., Exh. G, at 2). In light of this evidence, and Schneider's own characterization of its employees' schedules, Plaintiffs have sufficiently established that Schneider had in place a uniform policy of providing an aggregated thirty minute rest period. Thus, this claim presents common questions of law and fact. A common and relatively undisputed factual question is thus whether Schneider had a policy of providing an aggregated rest period. A common legal question is whether aggregated rest periods complies with the Labor Code. The answer to this legal question will drive the resolution of this claim – indeed it will essentially determine whether liability exists.

Notwithstanding this showing, Defendant argues that individual issues predominate. First, Defendant argues that because California law requires only that employers "authorize and permit" employees to take rest breaks of ten minutes per four hours worked and that employers need not ensure that employees take such rest periods. They state that employees had ample time to take rest breaks throughout their day, as illustrated by M5 timekeeping records showing that large portions of the day were coded to non-work order codes, such as "cleaning." This argument is unavailing. This is not a case in which Defendant had a policy authorizing rest periods but employees sued based on Defendant's failure to *ensure* that employees availed themselves of rest breaks. Rather, this is a case in which Schneider had a uniform policy of providing an aggregated rest period that is either lawful or unlawful as to all employees. Even assuming that mechanics may have had time to fit in an extra rest period and Schneider did not punish employees for stealing away for unauthorized rest periods, this does not mean that the law's requirement that employers provide or "authorize" rest periods is met.

Second, Defendant provides declarations from mechanics stating that they could take rest breaks outside of their scheduled paid break times, company management never prevented them from taking breaks, and the company always authorized and permitted them to take ten-minute rest periods for every four hours of work. Thus, Defendant argues that whether each mechanic took rest breaks, and whether the failure to take rest break was because of waiver or because of employer pressure, are individualized inquiries that preclude certification. This argument is also unavailing. The only evidence provided is in the form of numerous boilerplate or "cookie-cutter" declarations, which "inspire[] less confidence than declarations more closely resembling the facts to which potential class members would actually testify at trial." *See Espinoza v. Domino's Pizza, LLC*, No. EDCV 07-1601-VAP (OPx), 2009 WL 882845, at *13 (C.D. Cal. Feb. 18, 2009); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 4060 (N.D. Cal. 2007) (noting the "glaring reliability concerns" of similar declarations); *Silverman v. SmithKline Beecham Corp.*, Nos. CV 06-7272 DSF (CTx), CV 07-2601-DSF (CTx), 2007 WL 6344674, at *2 n.5 (C.D. Cal. Oct. 15, 2007) ("The Court strongly disapproves of the use of boilerplate attorney-drafted declarations."). Defendant did not provide a single deposition or document describing such a company policy, nor did it produce any M5 records showing that any employees clocked into "break time" for ten minutes every four hours. Moreover, these declarations are directly contracted by Schneider's own statements and admitted policy regarding the 1999 AWS schedule: as an eleven hour

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

workday, including a thirty minute rest period and thirty minute meal period. As such, we will not have to individually inquire of each employee *why* the employee did not take ten minute rest periods every four hours. Employees cannot waive a break period that is not provided, and they certainly cannot after-the-fact state that any breaks that were not taken were waived. Accordingly, after conducting a "rigorous analysis" of the evidence presented by both Parties, we are satisfied that the commonality and predominance requirements are not defeated by the declarations produced by Defendant. *See Falcon*, 457 U.S. at 161 (stating that a class action may only be certified "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied").

Defendant cites no authority stating that where employees find time to "fit in" an unauthorized rest break, this fulfills the law's requirement that employers provide or authorize ten-minute rest periods for every four hours worked. Accordingly, whether Defendant is liable on this claim appears to be a purely legal question. If aggregating rest periods complies with California law, then Schneider is not liable under this claim to any employees; if aggregating rest periods does not comply with California law, then Schneider is liable to all employees. This issue "predominate[s] over any questions affecting only individual members." Indeed, once this issue is resolved, the only individual questions will be related to the calculation of damages. While there may be some employees who found time within their schedule take additional breaks, this does not mean that these additional breaks were provided, or "authorized." Moreover, those additional breaks would appear to be the exception, rather than the rule, and thus these exceptions would not predominate over the common factual and legal questions present in this claim. Accordingly, we are satisfied that Plaintiffs' fourth claim meets Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

### 2. Typicality (Rule 23(a)(3))

Taylor and Krumbine state in their declarations that they were scheduled to work an 11-hour shift, four days per week, which included an aggregated half-hour paid rest break. (Taylor Decl. 3, 4; Krumbine Decl. 7). Accordingly, the claims or defenses of the Class Representatives are typical of – indeed identical to – the claims of Class Members

In conclusion, Plaintiffs' fourth claim meets the requirements of Rule 23(a) and 23(b)(3) and is suitable for class resolution.

### E. *Claim 5: Failure to Provide Second Meal Period*

Under California law, if employees work for a period of more than ten hours per day, an employer must provide a second meal period of at least thirty minutes. Cal. Labor Code § 512(a). This second meal period can be waived by mutual consent of the employer and employee if the first meal period is not waived and the shift is not longer than twelve hours. *Id.* Plaintiffs' meal period claim (Claim 5) relies on its "hours worked" claim (Claim 2) because if employees' half-hour rest period must be counted as "hours worked," then employees worked for 10.5 hours, and thus Schneider was required

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

to provide a second meal period. However, if the half-hour rest period need not be counted as "hours worked," then employees only "worked" ten hours, and Schneider was not required to provide a second meal period.

   **1.   Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3))**

   Defendant argues that it need not provide a second meal period because the rest period provided does not count as "hours worked" under California law. (Opp'n 17). This argument presents a purely legal issue that is common to all employees and in no way makes this claim unsuitable for class resolution. If Plaintiffs' legal argument is correct, then Defendant was required to provide all employees with a second meal period, and Defendant is liable to all who worked a 10.5-hour shift (including the rest period). If Defendant's legal argument is correct, then Defendant was not required to provide a second meal period, and Defendant is not liable to any employees who worked a shift that involved ten working hours and one paid rest period. Accordingly, this issue does not preclude class certification.

   Defendant also argues that if mechanics did not take a second meal break in a work day for which a second meal break must be provided, it was because they voluntarily agreed to forego the additional break. Defendant provides numerous boilerplate declarations stating: "When I have worked more than 10 hours in a work day, and have not taken additional meal or rest breaks, it is because I have worked less than 12 hours in the day, and voluntarily agreed to forego the additional breaks." It also argues that employers need only make meal breaks available. Thus, as long as Schneider did not "force" employees to forego a second meal period, Schneider cannot be liable for employees' failure to take one. As such, Defendant argues that any determination of liability will require a separate inquiry to each employee as to why he did not take a meal break on any particular day, thus precluding certification.

   This argument is also without merit. As discussed above, it is undisputed that Schneider's pre-2010 policy was that every shift consisted of ten "working" hours, plus a one-half hour paid rest break and a one-half hour paid meal break. Defendant has not provided any deposition testimony that a second meal period was provided, any documentation of company policy that a second meal period was provided and authorized, or any evidence that any employee has *ever* taken a second meal period. Arguing after the fact that employees failed to take a second meal period due to waiver is illogical – employees cannot waive a break that was not provided.

   Plaintiff's "meal period" claim involves "questions of law or fact common to the class." The common factual question is whether Schneider provided a second meal break (an issue that, as a matter of the company's general policy, would appear to be undisputed). The common legal issues are whether meal periods are "hours worked" for purposes of determining the length of an employee's shift, and consequently whether Defendant's policy of failing to provide a second meal period violates California law. These issues "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), and will drive the resolution of this claim, *Dukes*, 131 S. Ct. at 2551. Indeed, once these issues are resolved, the only individual questions will be related to the calculation of damages – the penalty under state law for the failure to provide a second meal period each day.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

### 2. Typicality (Rule 23(a)(3))

Taylor and Krumbine all were scheduled to work an eleven hour shift, four days per week, which included two paid break periods (one meal period and one rest period) and did not provide for a second unpaid meal period. (Taylor Decl. 3, 4; Krumbine Decl. 7). Accordingly, the claims or defenses of the Class Representatives are typical of – indeed identical to – the claims of the Class Members.

In conclusion, Plaintiffs' fifth claim meets the requirements of Rule 23(a) and 23(b)(3) and is suitable for class resolution.

### F. *Claims 6, 8, 9, 10, and PAGA Penalties: Derivative Claims*

As Defendant acknowledges, (Opp'n 22-23), Plaintiffs' sixth, eighth, ninth, and tenth claims, and their request for PAGA penalties are all derivative of claims that we have determined meet the Rule 23(a) and 23(b)(3) requirements. Because we have concluded that the claims of which these are derivative are suitable for resolution on a class basis, these derivative claims are also suitable for class resolution.[6] *See Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10–CV–01189–LHK, 2011 WL 4635198, at *15 (N.D. Cal. Oct. 5, 2011); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 518 n.5 (C.D. Cal. 2011) ("As the UCL Claim is wholly derivative of the Bonus/Overtime and Off-the-Clock Claims, the Court does not independently analyze the UCL Claim for purposes of class certification").

### V. Conclusion

In light of the foregoing, Plaintiffs' Motion is **GRANTED** in part. We hereby certify the following Classes and Subclasses with respect to Claims 1, 2, 4, 5, 6, 8, 9, and 10:

> Class: "All persons, at any time from February 5, 2006 to the present (the 'Relevant Period'), who were employed in California by Schneider National Carriers, Inc. in any full-time hourly mechanic position."
>
> 1999 AWS Subclass: "Class members who worked an alternative workweek schedule at Schneider National Carriers, Inc. prior to March 30, 2010."

---

[6] We briefly note that Defendant argues that Plaintiffs' Unfair Competition Law claim (Claim 10) is subject to equitable defenses such as laches or evidentiary prejudice that must be analyzed for each employee and thus preclude certification. (Opp'n 16). The California Supreme Court has held that equitable defenses may not be used to defeat a UCL claim but rather can only be used in fashioning remedies. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000). Accordingly, any such defenses – should they even be applicable – will not create predominance of individual questions for determining liability.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4565-GHK (JEMx) | Date | April 25, 2012 |
|---|---|---|---|
| Title | *Luis Polanco, et al. v. Schneider National Carriers, Inc.* | | |

Former Employee Subclass: "Class members who are no longer employed by Schneider National Carriers, Inc."

We hereby appoint Robert Taylor and Alan Krumbine as Representatives of the Class and Subclass. We also appoint Hagens Berman Sobol Shapiro LLP as Class Counsel and Rastegar & Matern as Liaison Counsel.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |